Edward M. BECKER and Alice M. Becker, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 88–2178.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1989.

Decided Feb. 23, 1989.

Rehearing Denied April 26, 1989.

William Randolph Klein, Sarasota, Fla., for appellants.

William S. Rose, Jr., Gary R. Allen, Gilbert S. Rothenberg, and Mary Frances Clark, Washington, D.C., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and BRIGHT, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Edward M. Becker and Alice M. Becker appeal from the Tax Court's determination of income tax deficiencies for 1979 and 1980 and liability for increased interest on these deficiencies. We affirm.

In 1979 and 1980, the Beckers invested a total of $12,000 in a tax shelter promotion called "Gold for Tax Dollars." For a complete description of the details of this promotion, see *Saviano v. Commissioner,* 765 F.2d 643 (7th Cir.1985), the reasoning and holding of which we adopt.

Gold for Tax Dollars was an involved scheme organized primarily for the financial benefit of its initiators and secondarily for the tax benefit of its investors. Under the plan, International Monetary Exchange (IME) would obtain at no charge leases for its investors from a gold mining concession in Panama of French Guiana. Through IME, the investors then would pay mining development expenses to General Miniere, S.A., a mining contractor. To obtain further capital for the operation, IME would sell on behalf of the investors "gold options" to a third party. The purchaser of the gold option was entitled to buy the extracted gold at a set price. The proceeds from the gold option sale were paid to General Miniere by IME for mining expenses. The investors then deducted their initial investment and the proceeds from the gold option sale from their income taxes as mining expenses under 26 U.S.C. § 616(a).

Although the foregoing description outlines the purported manner in which the Gold for Tax Dollars plan operated, in practice the operation was a mere front for a fraudulent operation. The plan primarily produced paper evidence to support tax deductions, but little more. Of the approximately 3,000 mines that were leased by investors, only one was actually worked.

The Beckers invested $12,000 in the Gold for Tax Dollars plan in 1979 and 1980. They then deducted $5,000 for initial min-

ing expenses and $15,000 for a gold option sale in 1979. In 1980, they deducted $7,000 for initial mining expenses and $28,000 for a gold option sale. They did not report the money received from the gold option sales as income in either 1979 or 1980.[1]

In 1983, the Beckers received notice from the Internal Revenue Service that the mining expenses deductions that they had claimed were disallowed because the Beckers had not established that they had acquired an interest in any mineral property, that mining expenses were paid, or that mining transactions had occurred. The IRS also informed the Beckers that the gold option sales proceeds should have been included in their income in the year of receipt and charged the Beckers with negligent or intentional disregard of rules and regulations. *See* 26 U.S.C. § 6653(a).

The Tax Court[2] determined that the Beckers were deficient in their 1979 income tax by $11,247 and in their 1980 income tax by $25,794. The court also found that the Beckers were liable for increased interest for substantial underpayments of tax attributable to tax-motivated transactions. *See* 26 U.S.C. § 6621(c). The court's ultimate finding of fact was that the Gold for Tax Dollars promotion was a "fraudulent factual sham." We agree.

Title 26 U.S.C. § 616(a) allows taxpayers to deduct "all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit * * * if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed." To be entitled to take deductions under this statute, however, the taxpayer must hold a working or operating interest in the mine or other natural deposit being developed. *See* 26 C.F.R. § 1.616–1(b)(3). The Tax Court found that the mineral claim leases purportedly held by the Beckers bore no relationship to reality and were in fact "bo-

gus." The Tax Court's findings on this issue are not clearly erroneous, and we therefore affirm the disallowance of the deductions.

The Tax Court also found that the Beckers were not entitled to take deductions for mining expenses because they had entered into the transactions primarily with the expectation of reaping tax benefits and not with the intention of making a profit. This finding, which is also reviewed under the clearly erroneous standard, *see, e.g., Yosha v. Commissioner,* 861 F.2d 494, 499 (7th Cir.1988); *Collins v. Commissioner,* 857 F.2d 1383, 1385 (9th Cir.1988), is amply supported by the record.

The Beckers also erred in not including the proceeds from the gold option sales in their taxable income. Under the terms of the gold option, the Beckers were not required to do, or forbear from doing, anything. The contractual right represented by the gold option was thus not a true option because it did not create an unconditional power of acceptance in the offeree. *Saviano, supra,* 765 F.2d at 651. Accordingly, the Beckers were required to declare the proceeds from the gold option sales in the year of receipt.

Title 26 U.S.C. § 6621(c) provides that the annual rate of interest shall be 120 percent of the established rate with regard to any substantial underpayment attributable to tax-motivated transactions. The tax motivation behind Gold for Tax Dollars is inescapable. Accordingly, the Tax Court correctly assessed a higher rate of interest on the Beckers' underpaid taxes.

We affirm on the basis of the Tax Court's opinion and the Seventh Circuit's decision in *Saviano.*[3]

1. The Internal Revenue Service ultimately identified 3,025 taxpayers who claimed $118,619,444 in Gold for Tax Dollars deductions from 1978 through 1980.

2. The Tax Court's opinion is reported at 88 T.C. 1306 (1987).

3. The Beckers contend that the Commissioner is barred by the principles of res judicata and collateral estopped from asserting a deficiency against them by virtue of the Ninth Circuit's decision in *SEC v. Rogers,* 790 F.2d 1450 (9th Cir.1986). We conclude that this argument is without merit.